## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **GRIDIRON MANAGEMENT GROUP LLC, JEFFREY SPROWLS,** | **CASE NO. 8:12CV3128** |
| **Plaintiffs,** | |
| **vs.** | **MEMORANDUM AND ORDER** |
| **ALLEN WRANGLERS, THOMAS BENEZIO, PATRICK PIMMEL,** | |
| **Defendants.** | |

This matter is before the Court on the Motion to Dismiss (Filing No. 16) filed by Defendant Patrick Pimmel.  Pimmel asserts that this case should be dismissed for lack of personal jurisdiction and improper venue.   *See* Fed. R. Civ. P. 12(b)(2), (3). Alternatively, if this Court finds jurisdiction and venue to be proper, Pimmel requests that this action be transferred to the United States District Court for the Northern District of Texas.  Finally, if this Court finds jurisdiction and venue to be proper and that transfer is not warranted, Pimmel contends that Count I of the Complaint (Filing No. 1, at ¶¶ 19-23) should be dismissed for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  For the reasons discussed below, the motions to dismiss for lack of personal jurisdiction and improper venue and the motion to transfer will be denied, and the motion to dismiss Count I from the Plaintiffs' Complaint will be granted.

# BACKGROUND[1]

Plaintiff Gridiron Management Group, LLC ("Gridiron"), is a Nebraska limited liability company with its principal place of business in Omaha, Nebraska.   Plaintiff Jeffrey Sprowls is a member and owner of Gridiron.   At all times relevant to this action, Gridiron owned and operated the Omaha Beef ("Beef"), a member of the Indoor Football League ("IFL").   Sprowls ran the Beef's day-to-day operations.   Defendant Allen Wranglers ("Wranglers") is also a member of the IFL, with its principal place of business in Allen, Texas.   Although he is now employed by the Wranglers, at all times relevant to this action, Defendant Thomas Benezio was the Commissioner of the IFL.   Pimmel, currently a resident of Missouri, was the Wranglers' head coach.   Pimmel lived in Texas when he coached the Wranglers.   (Filing No. 17-1, Aff. of Patrick Pimmel, at ¶¶ 2-3.) Before becoming the Wranglers' head coach, Pimmel coached the Beef.   Since he started coaching for the Wranglers, he has not resided or conducted business in Nebraska and has maintained little to no physical contact with Nebraska.   (*See* Filing No. 17-1, at ¶¶ 7-22.)

Sprowls maintained private electronic accounts with Yahoo!, Inc., an internet service provider.   Those accounts contained both personal and business information. Sprowls was the sole authorized user of those accounts; he did not provide any of the Defendants with the means to access them.   Sprowls also maintained personal and

---

[1] The facts are taken from the pleadings and Pimmel's affidavit (Filing No. 17-1).   *See Coen v. Coen*, 509 F.3d 900, 904-05 (8th Cir. 2007).   For purposes of the pending motions to dismiss, the Court must view the facts in the light most favorable to the Plaintiffs and resolve all factual conflicts in their favor.   *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir. 1991); *Mimun v. Bashir,* No. 8:08CV204, 2008 WL 3994878, at *1 (D. Neb. Aug. 25, 2008).

business information electronically on one or more computers that he and/or Gridiron owned.

Sometime in 2011, Pimmel, at Benezio's direction, began using unauthorized means to gain access into Sprowls's electronic accounts. This allowed Pimmel to gain unauthorized access to Sprowls's electronic accounts on more than one hundred separate occasions. After gaining access to Sprowls's accounts, Pimmel viewed Sprowls's private electronic communications and disseminated them to Benezio. Benezio did not warn or inform Gridiron or Sprowls that those accounts had been accessed.

On June 18, 2012, Gridiron and Sprowls filed their Complaint alleging seven causes of action. Gridiron and Sprowls claim that: (I) all the Defendants engaged in fraud in connection with computers in violation of 18 U.S.C. § 1030; (II) all the Defendants engaged in unlawful access to stored communications in violation of 18 U.S.C. § 2701; (III) all the Defendants engaged in conduct in violation of Nebraska's Telecommunication Consumer Protection Act, *see* Neb. Rev. Stat. §§ 86-2,104 and 86-2,110; (IV) Wranglers and Pimmel engaged in conduct in violation of Nebraska's Consumer Protection Act, *see* Neb. Rev. Stat. § 59-601, *et seq.*; (V) all the defendants tortiously interfered with a valid business expectancy held by Gridiron; (VI) Benezio breached a fiduciary duty owed to Gridiron and Sprowls by virtue of his position as commissioner of the IFL; and (VII) Benezio acted negligently by failing to inform Gridiron and Sprowls that Pimmel was accessing Sprowls's electronic accounts and by disseminating the information he received.

3

**DISCUSSION**

**I. Personal Jurisdiction**

To survive a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff must state sufficient facts in the complaint to support a reasonable inference that defendants may be subjected to jurisdiction in the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008). When jurisdiction has been challenged, "the plaintiff has the burden of proving facts supporting personal jurisdiction," *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008), but a plaintiff need only "establish[ ] a prima facie case" that personal jurisdiction exists. *Steinbuch*, 518 F.3d at 585. The plaintiff's showing is "tested, not by the pleading alone, but by the affidavits and exhibits presented" in support of and in opposition to the motion to dismiss for lack of personal jurisdiction. *Coen*, 509 F.3d at 904-05 (internal quotations omitted). When considering these evidentiary materials, the Court must view the facts in the light most favorable to the plaintiff and resolve all factual conflicts in its favor. *Dakota Indus.,* 946 F.2d at 1387.

In determining whether this Court has personal jurisdiction over a nonresident defendant, two issues are presented: (1) whether the requirements of the Nebraska long-arm statute are satisfied and (2) whether the exercise of jurisdiction over this Defendant will violate the Fourteenth Amendment Due Process Clause. *Coen*, 509 F.3d at 905. Because Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536,[2] has

---

[2] Neb. Rev. Stat. § 25-536 provides:

A court may exercise personal jurisdiction over a person:
(1) Who acts directly or by an agent, as to a cause of action arising from the person:

4

been interpreted to extend jurisdiction over nonresident defendants to the fullest degree allowed by the Due Process Clause of the United States Constitution, *Wagner v. Unicord Corp.*, 526 N.W.2d 74, 77-78 (Neb. 1995), the Court need only determine whether the assertion of jurisdiction offends constitutional limits.

In order to exercise personal jurisdiction over a nonresident defendant, due process requires that the defendant have "minimum contacts" with the forum state such that maintenance of a suit against that defendant does not offend "'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).   A defendant's minimum contacts with the forum state "must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003). "The Supreme Court has recognized two theories for evaluating personal jurisdiction: general and specific jurisdiction." *Steinbuch*, 518 F.3d at 586 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–15 (1984)).

---

(a) Transacting any business in this state;
(b) Contracting to supply services or things in this state;
(c) Causing tortious injury by an act or omission in this state;
(d) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;
(e) Having an interest in, using, or possessing real property in this state; or
(f) Contracting to insure any person, property, or risk located within this state at the time of contracting; or
(2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

"Under the theory of general jurisdiction, a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) (quoting *Helicopteros*, 466 U.S. at 415–16); *see also Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994) (alteration in original) (quoting *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir. 1993)) ("'[g]eneral jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.'")  On the other hand, under the theory of specific jurisdiction, "the injury giving rise to the lawsuit [must have] occurred within or had some connection to the forum state."  *Dever*, 380 F.3d at 1073 (citing *Helicopteros*, 466 U.S. at 414; *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994)).  In other words, a court will have specific jurisdiction over a cause of action "'arising from or related to a defendant's actions within the forum state.'"  *Bell Paper Box*, 22 F.3d at 819 (quoting *Sondergard*, 985 F.2d at 1392).

Under either theory, the defendant must have committed "'some act by which the defendant purposely avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Dever*, 380 F.3d at 1073 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson*, 357 U.S. at 253).  The defendant's "purposeful availment must be sufficient to provide the defendant with fair warning that his activities might result in his being haled into court in that jurisdiction." *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006) (citing *Porter v. Berall*, 293

6

F.3d 1073, 1075 (8th Cir. 2002)).   In other words, the defendant's contacts with the forum state must not be "random," "fortuitous," "attenuated," or the result of the "unilateral activity of another party or a third person."   *Burger King*, 471 U.S. at 475 (quotations and citations omitted).   Once it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state, such contacts must be analyzed in light of other factors to determine whether the exercise of personal jurisdiction over the nonresident defendant comports with "fair play and substantial justice."   *Id.* at 476 (quotations and citation omitted).

Keeping the foregoing principles in mind, the Eighth Circuit instructs courts to consider the following factors to determine whether jurisdiction comports with due process: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties."   *Coen*, 509 F.3d at 905 (quotations and citation omitted).[3]   The third factor–the relation of the cause of action to the contacts–refers to the distinction between specific and general jurisdiction.   *Id.*   In applying these factors, the central inquiry is the "'relationship among the defendant, the forum, and the litigation.'" *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983) (quoting *Shaffer v.*

---

[3] S*ee also Sybaritic, Inc. v. Interport Int'l, Inc.*, 957 F.2d 522, 524 (8th Cir. 1992) (citing *Falkirk Mining Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 373-74 (8th Cir. 1990)):

> [W]e explained that the determination of whether personal jurisdiction comports with due process may be guided by a careful consideration of the following five factors: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. . . . This analytical framework incorporates the notions of both "minimum contacts" and "fair play and substantial justice."

*Heitner*, 433 U.S. 186, 204 (1977)).   Therefore, the fourth and fifth factors are of secondary importance and not determinative.  *Id.*; *see also Coen*, 509 F.3d at 905.

Pimmel argues that the Court lacks general jurisdiction over him because he does not reside in Nebraska and does not have the type of continuing and pervasive contact with Nebraska that is required to establish general jurisdiction.  Pimmel also contends that the Court lacks specific jurisdiction over him because he had no expectation that he might be haled to court in Nebraska due to accessing an email account while working and residing in Texas.  Gridiron and Sprowls do not contend that Pimmel's contact or contacts are sufficient to give rise to general jurisdiction.  Instead, they argue that the causes of action they are asserting against Pimmel arose directly out of his contact with Nebraska residents and property located within Nebraska.  They contend that Pimmel is subject to this Court's specific personal jurisdiction under the "effects test."

The effects test "allows the assertion of personal jurisdiction over non-resident defendants whose acts are performed for the very purpose of having their consequences felt in the forum state."  *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390-91 (8th Cir. 1991) (internal quotations omitted); *see also Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010).  Even if the effects test applies in a given case, it does not replace the five-factor test set forth above.  Instead, whether the defendant's contacts caused "effects" in the forum state is "merely . . . an additional factor to consider when evaluating a defendant's relevant contacts with the forum state."  *Johnson v. Arden*, 614 F.3d 785, 796-97 (8th Cir. 2010).

It may reasonably be inferred from the Complaint that Pimmel knew his conduct would be felt by Nebraska residents.   Pimmel is alleged to have accessed, without authorization, the private electronic accounts of Gridiron and Sprowls, owners of the Beef, and disseminated the private, proprietary information that he discovered.   Those accounts were maintained both with an internet service provider and on computers owned by Gridiron and/or Sprowls.   Nothing in the pleadings or record indicates that the Beef have been based in a city other than Omaha, Nebraska, and Pimmel used to be a coach for the Beef.   In other words, Pimmel is alleged to have intentionally "hacked" into the computer database of his former Nebraska employer.   Assuming these allegations to be true, Pimmel should have anticipated the brunt of the injury resulting from his actions would be felt in Nebraska.

Pimmel is alleged to have accessed, without authorization, the private electronic accounts more than one hundred times, and it is apparent from the Complaint that Sprowls and Gridiron's claims against Pimmel arose out of this conduct.   That conduct was "not in the nature of ordinary business competition, where the connection between the out-of-state competitor and the forum state is often merely incidental and likely insufficient to establish minimum contacts."   *Rural Media Group, Inc. v. Performance One Media, LLC*, 697 F. Supp. 2d 1097, 1111 (D. Neb. 2010) (citing *Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992); *Keystone Publishers Serv., Inc. v. Ross*, 747 F.2d 1233, 1234 (8th Cir. 1984)).   Whether Pimmel was physically present in Nebraska when he accessed the private electronic accounts without authorization is

irrelevant.[4]   Therefore, based on the "effects test" and the nature, quality, and quantity of Pimmel's alleged contacts with Nebraska, the Court finds that Pimmel should reasonably have anticipated being haled into court in Nebraska.

Having found that Pimmel established minimum contacts with Nebraska, the Court must determine whether the assertion of jurisdiction over Pimmel would comport with "fair play and substantial justice." *Burger King*, 471 U.S. at 476. Nothing in the pleadings or that the parties have pointed to in the record indicates that it would be so inconvenient to litigate this action in Nebraska such that maintaining jurisdiction in Nebraska would be rendered unreasonable.

For the foregoing reasons, Pimmel's Motion, to the extent that it is brought pursuant to Federal Rule of Civil Procedure 12(b)(2), will be denied.

## II.  Venue

Federal Rule of Civil Procedure 12(b)(3) permits a party to raise the defense of "improper venue" by motion. "[V]enue of all civil actions brought in district courts of the United States" is governed by 28 U.S.C. § 1391. 28 U.S.C. § 1391(a). Section 1391(b) provides:

A civil action may be brought in—

---

[4] *See Info. Techs. Int'l, Inc. v. ITI of N. Fla., Inc.*, No. 01 C 4668, 2001 WL 1516750, at *7 (N.D. Ill. Nov. 28, 2001) (internal quotations and citations omitted):

The Individual Defendants reached across state boundaries and into Illinois by hacking into ITI's computer system and changing the remittance address to redirect accounts receivable from Illinois to Florida. The fact that cyber-space was the medium for inflicting harm is of no moment. . . .

The Individual Defendants purposefully directed their tortious activity toward Illinois. Since they participated in the deliberate plan to redirect accounts receivable from an Illinois resident, they should reasonably anticipate being haled into court in Illinois.

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*Id.* at § 1391(b). "'[O]nce a defendant raises the issue of proper venue by motion,'" the plaintiff bears the burden of showing that venue is proper. *Mimun*, 2008 WL 3994878, at *1 (quoting *Beckley Auto Profit Masters, L.L.C.*, 266 F. Supp. 2d 1001, 1003 (S.D. Iowa 2003)). "In determining whether venue is proper, all well-plead [sic] 'allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits.'" *Id.* (quoting *Intercoast Capital Co. v. Wailuku River Hydroelectric Ltd. P'ship,* No. 4:04-CV-40304, 2005 WL 290011, at *5 (S.D. Iowa Jan. 19, 2005)).

Pimmel argues that venue is improper because no defendant is a resident of Nebraska; the alleged events or omissions giving rise to this action occurred in Texas; and Pimmel is not subject to personal jurisdiction in Nebraska. Sprowls and Gridiron contend that venue is proper in Nebraska because Pimmel is subject to personal jurisdiction in Nebraska.

Although, as discussed above, Pimmel is subject to personal jurisdiction in Nebraska, § 1391(b)(3) provides that venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" only "if there is no district in which an action may otherwise be brought as provided in" §

11

1391.  *Id.* at §1391(b)(3).  Therefore, the fact that Pimmel is subject to personal jurisdiction in Nebraska does not make a Nebraska court a proper venue unless "there is no district in which [this] action may otherwise [have] be[en] brought."  This means that the Court must look to subsections (1) and (2) of § 1391(b) before looking to subsection (3) to determine if venue is proper.[5]

### A.  § 1391(b)(1)

With respect to § 1391(b)(1), the venue statute provides that a "natural person . . . [is] deemed to reside in the judicial district in which that person is domiciled," and "an entity with the capacity to sue and be sued . . . [is] deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  *Id.* at § 1391(c)(1), (2).  "If natural persons are involved, it is their residence at the time the action is commenced, not when the claim arose, that is decisive in ascertaining the propriety of federal venue."  14D Charles

---

[5] *See* 14D Charles Alan Wright et al., Federal Practice and Procedure § 3806.2 (3d ed. 2012):

In both federal question and diversity cases, the general venue statute directs plaintiffs to lay venue on the basis of the defendants' residence or in a judicial district in which a substantial part of the events or omissions that gave rise to the claim occurred. In some cases, however, there will be no district that satisfies either of these two broad venue provisions. To avoid the possibility of venue gaps, the general venue statute contains a fallback provision that can be used when, and only when, there is no district in which a case otherwise could be brought in accordance with the venue statutes. . . .

It bears emphasis that . . . th[is] provision[ ] become[s] applicable only when there is no district in which the case otherwise could be brought that would be in accordance with the venue statutes. . . .

[T]he burden is placed on the defendant to make the affirmative showing that there is another judicial district in which the case otherwise could be brought.

In 2011, § 1391 was amended so that it does not differentiate between cases brought pursuant to a court's diversity jurisdiction and cases brought pursuant to a court's federal question jurisdiction.  *See* Pub. L. No. 112-63, Title II, § 202, Dec. 7, 2011, 125 Stat. 763.  As a result, although there used to be two "fallback provisions"-one for diversity cases, one for federal question cases-now there is only one fall back provision that applies to "all civil actions brought in district courts of the United States."  *See* 28 U.S.C. § 1391(a), (b)(3).

Alan Wright et al., Federal Practice and Procedure § 3805 (3d ed. 2012).  The time the claim arose is decisive in ascertaining the propriety of venue when an entity is involved. *Great Am. Ins. Co. v. Lesser Enters., Inc.*, 353 F.2d 997 , 1001 (8th Cir. 1965).

It is clear from the Complaint that at least one of the Defendants was not a resident of Nebraska at the time the Plaintiffs filed this action.  Therefore, § 1391(b)(1) cannot be the basis for venue being proper in this Court.  However, nothing indicates that the defendants were all "residents" of one state at the relevant time.  Thus, it appears that § 1391(b)(1) cannot be the basis for venue being proper in any state.  Unless the Court finds that venue is not proper in Nebraska and is proper in another state under § 1391(b)(2), venue would be proper in Nebraska under either § 1391(b)(2) or (b)(3).

## B.  § 1391(b)(2)

With respect to § 1391(b)(2), "[t]he statute does not posit a single appropriate district for venue; venue may be proper in any of a number of districts, provided only that a substantial part of the events giving rise to the claim occurred there," *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (citing *Setco Ents. Corp. v. Robbins,* 19 F.3d 1278, 1281 (8th Cir.1994)), or that "a substantial part of property that is the subject of the action is situated" there.  28 U.S.C. § 1391(b)(2).  The question is "whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts."  *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003) (citing *Setco*, 19 F.3d at 1281).

Nothing indicates that any of the Defendants were ever physically present in Nebraska.  The computers Pimmel is alleged to have accessed, however, appear to be

13

located in Nebraska, and although Pimmel may not have been physically present in Nebraska, Sprowls and Gridiron have alleged facts from which it may reasonably be inferred that Pimmel "reached across state boundaries and into [Nebraska] by hacking into" Sprowls's and/or Gridiron's computers.  *See Info. Techs. Int'l*, 2001 WL 1516750, at *7.   Therefore, they have alleged sufficient fact to show that Nebraska has a substantial connection to their claims against Pimmel.[6]   Taking as true all uncontroverted allegations in the Complaint, Sprowls and Gridiron have satisfied their burden of showing that venue is proper in Nebraska, and Pimmel's motion to dismiss for improper venue will be denied.

## III.  Transfer

Where jurisdiction and venue are proper, transfer of venue is governed by 28 U.S.C. § 1404.  Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  The Court is not limited to these factors, but must consider all relevant factors and examine the particular circumstances in the case at hand.  *Terra Int'l., Inc. v. Miss. Chem. Corp.* (*Terra II*), 119 F.3d 688, 691 (8th Cir. 1997).  The

---

[6] *See also Estate of Abtan v. Blackwater Lodge & Training Ctr.*, 611 F. Supp. 2d 1, 8 (D.D.C. 2009) (internal quotations and citations omitted) ("In tort cases, when determining whether a substantial part of the events or omissions giving rise to the plaintiff's claim occurred . . . in a particular district for purposes of § 1391(b)(2), . . . courts focus on . . . the place where the allegedly tortious actions occurred and the place where the harms were felt."); *cf. Capital Corp. Merch. Banking, Inc. v. Corporate Colocation, Inc.*, 6:07-CV-1626-ORL-19KRS, 2008 WL 4058014, at *3 (M.D. Fla. Aug. 27, 2008) (citations omitted):

> Nevertheless, the Court must conduct the venue analysis with an eye to the difficulties posed by applying section 1391([b])(2) to a case in which the "wrong" does not center on physical acts or omissions. . . . [I]n the context of defamation and other non-physical torts, courts generally hold that venue under section 1391([b])(2) is proper in the district where the injured party resides and the defamatory statements were published.

moving party bears the burden of showing why a change of forum is warranted, *Stinnett v. Third Nat'l Bank of Hampden Cnty.*, 443 F. Supp. 1014, 1017 (D. Minn. 1978).

Courts consider several factors when balancing the convenience of the parties and witnesses, such as:

> (1) the convenience of the parties, (2) the convenience of the witnesses – including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law.

*Terra II*, 119 F.3d at 696.   Furthermore, "sheer numbers of witnesses will not decide which way the convenience factor tips . . . [and] [m]erely shifting the inconvenience from one side to the other . . . obviously is not a permissible justification for a change of venue."  *Id.* at 696-97 (quotations and citations omitted).

Courts also consider several factors when determining whether the interests of justice support transfer of venue, including "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law."  *Id.* at 696.  Generally, "federal courts give considerable deference to a plaintiff's choice of forum."  *Id.* at 695.

The Plaintiffs do not argue that this action could not "have been brought" in the United States District Court for the Northern District of Texas.  Instead, they argue that the "convenience of the parties and witness" and the "interests of justice" factors do not weigh in favor of transferring this case to the Northern District of Texas.

15

### A. Convenience of Parties and Witnesses

Pimmel argues that this case should be transferred to the Northern District of Texas because he is not a Nebraska resident and conducts no business in Nebraska. There is, however, no reason to believe that it would be more convenient for Pimmel, a Missouri resident, to litigate this action in Texas. Even if there were a reason, it clearly would be more convenient for Gridiron and Sprowls to litigate this action in Nebraska, and "a transfer shifting the inconvenience from one party to another need not be granted." *Terra Int'l, Inc. v. Miss. Chem. Corp.* (*Terra I*), 922 F. Supp. 1334, 1358 (N.D. Iowa 1996) *aff'd,* 119 F.3d 688 (8th Cir. 1997). Therefore, the relative convenience of the parties "factor" does not support transfer.

Pimmel also argues that this case should be transferred to Texas because this litigation will involve witnesses from Texas. Sprowls and Gridiron represent that some of their witnesses may come from Nebraska, Missouri, and Texas. "The question of witness convenience, properly viewed, is whether the forum to which transfer is sought is so inconvenient as to inhibit the access of one party or the other to necessary witnesses." *Terra I*, 922 F. Supp. at 1360. This accessibility question "depends upon whether those witnesses will willingly appear, whether they can be compelled to appear, and whether alternative means of producing their testimony exist." *Id.* Pimmel bears the burden of showing why a change in forum is warranted, and has failed to point to any evidence indicating that any of his Texas witnesses would not be "accessible" if this case were to proceed in Nebraska. Therefore, Pimmel has failed to show that the convenience of the witnesses "factor" supports transfer.

Finally, Pimmel argues that transfer of this case to Texas is warranted because the evidence he will need to produce to defend this action is located in Texas. Nothing in the record, however, suggests that transferring the case to Texas would provide better access to any documentary evidence. Therefore, Pimmel has failed to satisfy his burden of showing that the accessibility to records and documents "factor" supports transfer.

### B. Interests of Justice

The Court does not find that judicial economy will be served better by transferring this litigation to Texas. Nothing indicates judicial resources will be wasted if this action remains before this Court. *Terra I*, 92 F. Supp. at 1363. Gridiron and Sprowls, the plaintiffs in this action, chose to bring this action in a Nebraska forum, and federal courts generally "give considerable deference to a plaintiff's choice of forum." *Terra II*, 119 F.3d at 695. Furthermore, Gridiron and Sprowls are Nebraska residents, and the substantial deference that is generally given to a plaintiff's choice of forum is given even "more weight when the chosen forum is also the plaintiff's residence." *Venteicher v. Smyrna*, No. 8:09CV272, 2009 WL 3254498, at *10 (D. Neb. Oct. 8, 2009) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71, 72 (2d Cir. 2000); 15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3849 (3d ed. 2007)). Finally, Pimmel does not contend, and the record does not indicate, that any of the other interests of justice "factors" warrant transfer of venue in this case.

After a careful review of the convenience and interests of justice "factors," the Court finds that Pimmel has not met his burden of showing that the transfer of this case is justified. Therefore, Pimmel's motion to transfer will be denied.

17

**IV.  Failure to State a Claim for Fraud in Connection with Computers**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[A]lthough a complaint need not include detailed factual allegations, 'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629-30 (8th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Rather, "the complaint must set forth 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 630 (citing *Twombly*, 550 U.S. at 570).

"'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716 (8th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).  "'Courts must accept . . . specific factual allegations as true but are not required to accept . . . legal conclusions.'" *Outdoor Cent., Inc. v. GreatLodge.com, Inc.,* 643 F.3d 1115, 1120 (8th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556).  "A pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).  The complaint's factual allegations must be "sufficient 'to raise a right to relief above the speculative level.'" *Williams v. Hobbs,* 658 F.3d 842, 848 (8th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

When ruling on a defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'"  *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).   The complaint, however, must still "include sufficient factual allegations to provide the grounds on which the claim rests." *Drobnak v. Andersen Corp.,* 561 F.3d 778, 783 (8th Cir. 2009).

"Two working principles underlie . . . *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950 (citing *Twombly,* 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will . . .  be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

The Plaintiffs bring their "fraud in connection with computers" claim under 18 U.S.C. § 1030.  Although § 1030 is primarily a criminal statute, § 1030(g) allows a party to bring a private right of action under certain circumstances.  Section 1030(g) states:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i).

18 U.S.C.A. § 1030(g).  In other words, to state a claim under § 1030(g), a party must plead facts that, if true, would be sufficient to establish "(1) . . . the elements of the particular substantive (criminal) offense under subsection 1030(a); (2) . . . the plaintiff suffered 'damage or loss' as a result of such a violation . . . ; and (3) . . . one of the five types of conduct specified under subsection (c)(4)(A)(i)[.]" *Czech v. Wall St. on Demand, Inc.*, 674 F. Supp. 2d 1102, 1109 (D. Minn. 2009).  Although some of the particular substantive offenses involve "fraud,"  "[t]he heightened pleading standards of Rule 9(b) do not apply to" claims brought under §1030(g).  *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 719 n.13 (N.D. Ill. 2009).[7]

Gridiron and Sprowls contend they have pleaded facts sufficient to establish that the Defendants violated the substantive offense described at § 1030(a)(4).  (Filing No. 22, at CM/ECF p. 5.)  A defendant violates § 1030(a)(4) if it "knowingly and with intent to defraud, accesses a protected computer without authorization"[8] or in excess of its

---

[7] *See also Facebook, Inc. v. MaxBounty, Inc.*, 274 F.R.D. 279, 284 (N.D. Cal. 2011) (quoting *eBay Inc. v. Digital Point Solutions, Inc.,* 608 F.Supp.2d 1156, 1164 (N.D. Cal. 2009) (analyzing claims brought under § 1030(a)(4) and (b) and stating that "[t]his Court has held that fraud 'under [§ 1030] only requires a showing of unlawful access; there is no need to plead the elements of common law fraud to state a claim under the Act.'"); *Dental Health Prods., Inc. v. Ringo*, No. 08-C-1039, 2009 WL 1076883, at *8 (E.D. Wis. Apr. 20, 2009) ("While a violation of section 1030(a)(4) requires that the defendant act with intent to defraud, fraud *per se* is not an element. Thus, the particularity requirement of Rule 9(b) does not apply.").

[8]

[T]he term "protected computer" means a computer—

(A) exclusively for the use of a financial institution or the United States Government, or, in the case of a computer not exclusively for such use, used by or for a financial institution or the United States Government and the conduct constituting the offense affects that use by or for the financial institution or the Government; or

(B) which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States[.]

18 U.S.C. § 1030(e)(2).

authorization,[9] "by means of such conduct furthers the intended fraud and obtains anything of value," and "the object of the fraud and the thing obtained consists . . . of [more than] the use of the computer and the value of such use is . . . more than $5,000 in any 1-year period[.]"  18 U.S.C. § 1030(a)(4).

Subsection (e)(8) of § 1030 defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information[.]"  18 U.S.C. § 1030(e)(8). "'[D]amage' does not encompass harm from the mere disclosure of information and [§ 1030] is not intended to expansively apply to all cases where a trade secret has been misappropriated by use of a computer."  *Landmark Credit Union v. Doberstein*, 746 F. Supp. 2d 990, 993 (E.D. Wis. 2010) (internal quotations omitted).  Subsection (e)(11) of § 1030 defines a "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service[.]"  18 U.S.C. § 1030(e)(11).  "Purely economic harm unrelated to the computer systems is not covered by this definition" of "loss." *SKF USA*, 636 F. Supp. 2d at 721 (citing *Nexans Wires S.A. v. Sark–USA, Inc.,* 319 F.Supp.2d 468 (S.D.N.Y. 2004).

The factors set forth in subclauses (I), (II), (III), (IV), and (V) of § 1030(c)(4)(A)(i) are:

(I) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United

---

[9] A defendant will be in excess of its authorization if it "access[es] a computer with authorization and . . . use[s] such access to obtain or alter information in the computer that the [defendant] is not entitled so to obtain or alter[.]"  18 U.S.C. § 1030(e)(6).

States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;

(II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;

(III) physical injury to any person;

(IV) a threat to public health or safety; [and]

(V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security[.]

18 U.S.C. § 1030(c)(4)(A)(i)(I)-(V).

Gridiron and Sprowls have alleged that Sprowls was the sole authorized user of his private electronic accounts and that Pimmel intentionally gained access to those accounts and disseminated the information he obtained.  (Filing No. 1, at ¶¶ 11-17.) They have alleged that Pimmel did so knowingly, and with the intent to defraud.  (Filing No. 1, at ¶¶ 20-21.)  They have not, however, alleged any facts from which it may reasonably be inferred that they suffered from more than the "mere disclosure of information," *Landmark*, 746 F. Supp. 2d at 993 (internal quotations omitted), or that they have suffered a "loss" as that term is defined in § 1030(e)(11).  Although they contend that "Pimmel's acts caused loss to Plaintiffs during a one year period aggregating more than $5,000 in value" (Filing No. 1, at ¶ 23), "[a] pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement will not suffice."  *Hamilton*, 621 F.3d at 817-18 (quoting *Twombly*, 550 U.S. at 555).  Further factual enhancement

was required for Gridiron and Sprowls to have stated a plausible claim for relief under §

1030.  Therefore, Pimmel's motion to dismiss Count I of the Complaint will be granted.

Gridiron and Sprowls requested that, if the Court granted Pimmel's motion to

dismiss Count I from the Complaint, they have an opportunity to amend their Complaint.

The Court will not foreclose the Plaintiffs from amending their Complaint at this time

and, therefore, Count I of the Complaint will be dismissed without prejudice.

Accordingly,

IT IS ORDERED:

1.      Defendant Patrick Pimmel's Motion to Dismiss (Filing No. 16) will be

granted, in part, as follows:

a.      Count I of the Plaintiffs' Complaint (Filing No. 1, at ¶¶ 19-22), alleging

that all of the defendants engaged in the unlawful access to stored

communications under 18 U.S.C. § 1030, is dismissed without

prejudice;

b.      The Motion is otherwise denied; and

2.      Defendant Patrick Pimmel will respond to the remaining allegations in the

Complaint on or before November 1, 2012.


Dated this 18th day of October, 2012.

                                        BY THE COURT:


                                        s/Laurie Smith Camp
                                        Chief United States District Judge